IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DARRELL WAYNE SMITH                                        PLAINTIFF

v.            Civil No. 4:10-cv-04081

WARDEN GARY TURNER;
NURSE WILLIAMS; NURSE
STEWART; and NURSE CHEATHAM                   DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Darrell Wayne Smith, a former inmate of the Miller County Detention Center (MCDC), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Plaintiff was incarcerated at the MCDC from December of 2009 until July of 2010. During his incarceration there, Plaintiff maintains he was denied adequate medical care. He names as Defendants: Warden Gary Turner; Nurse Williams; Nurse Stewart; and Nurse Cheatham.

Separate Defendants Nurse Williams, Nurse Stewart, and Nurse Cheatham filed a motion for summary judgment (Doc. 20). At Plaintiff's request, a questionnaire (Doc. 32) was prepared to assist him in responding to the summary judgment motion. Plaintiff responded to the motion (Doc. 33) and Defendants filed a reply brief (Doc. 34).

Also before me is the motion for judgment on the pleadings filed by Separate Defendant Warden Turner (Doc. 28). Plaintiff's response to the questionnaire (Doc. 33) also constituted his response to this motion. Both motions are now before me for issuance of this report and recommendation.

-1-

**I. The Summary Judgment Motion**

**1. Background**

Plaintiff was booked into the MCDC on pending criminal charges on December 31, 2009.[1] Defendants' Exhibit 4 (hereinafter Defts' Ex.). He remained incarcerated there until July 22, 2010, when he was released to the Arkansas Department of Correction (ADC). Id.

Upon arrival at the MCDC, Plaintiff's left foot and ankle were in an immobilization cast due to a calcaneus, or heel bone, fracture. Plaintiff's Response (Doc. 33)(hereinafter Resp.) at ¶ 4. He was seen by medical staff on December 31st but contends no medical screening was done. Id. at ¶ 5.

While Plaintiff was in the cast, he was provided plastic trash bags to cover it while showering. Resp. at ¶ 32(A). According to the National Association of Orthopaedic Nurses, wrapping the edge of the cast with a towel and covering the entire case with a plastic bag, secured with tape or elastic bands is an acceptable method of protection during bathing. Defts' Exs. 2 & 3. Plaintiff indicates he was not provided with a towel to wrap the edges of the cast or tape. Resp. at ¶ 32(B); Doc. 26 at pg. 2.

On January 7th, Dr. Nash reviewed Plaintiff's chart but did not make any new orders. Defts' Ex. 1-c. Plaintiff did not see Dr. Nash and was not aware of his review of Plaintiff's jail medical chart. Resp. at ¶ 10.

On January 10, 2010, Dr. Nash prescribed Plaintiff Ibuprofen 800 mg. for pain for a period of thirty days. Resp. at ¶ 6. Plaintiff acknowledges that he received the Ibuprofen. Id. at ¶ 8. He was also instructed to ambulate but asserts that he could not do so because he was "isolated in a one

---

[1] In his response to the summary judgment motion, Plaintiff indicates he was convicted in March of 2009. However, his December 31st booking sheet clearly indicates he was being held on pending criminal charges. Regardless of whether Plaintiff was in pretrial or convicted status, the deliberate indifference standard of the Eighth Amendment applies. See e.g., Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010)(noting the court has repeatedly applied the deliberate indifference standard to claims brought by both pretrial detainees and convicted inmates).

man cell, in the infirmary with nothing to ambulate foot with." Id. at ¶ 7.

On January 15th, Dr. Nash ordered the medical staff to set up a follow-up appointment with Dr. Pappas' office for evaluation of Plaintiff's left calcaneus fracture. Defts' Ex. 1-d. On January 19th, Nurse Williams called Dr. Pappas' office and left a message that she needed to make an appointment for Plaintiff. Id. Plaintiff questions the reason it took four days for Nurse Williams to follow the doctor's orders. Resp. at ¶ 11. That same day, Dr. Pappas' office faxed an order to Nurse Cheatham stating that Plaintiff was to have a follow-up CT scan performed at the Collom & Carney Clinic on January 22nd. Defts' Ex. 1-e.

On January 22nd, Plaintiff was transported to the Collom & Carney Clinic for the CT scan. Resp. at ¶ 13. The CT scan showed "minimally displaced comminuted fracture involving the calcaneus with fracture lines extending to the subtalar joints." Defts' Ex. 1-f.

On February 1st, Dr. Nash wrote a new prescription for Ibuprofen 800 mg. for an additional thirty days. Defts' Ex. 1-g. Plaintiff received the Ibuprofen. Resp. at ¶ 16.

On February 2nd, Dr. Pappas' office called and gave Plaintiff the earliest available appointment which was on February 24th. Defts' Ex. 1-b. On February 24th, Plaintiff was seen by Dr. Pappas. Resp. at ¶ 18. He noted Plaintiff had been walking on his foot without crutches in noncompliance with the doctor's orders. Id. X-rays taken on February 24th showed a healed calcaneus fracture. Defts' Ex. 1-i. Plaintiff complained of a stabbing pain around his mid-foot. Id. X-rays did not show any mid-foot fractures. Id. Dr. Pappas believed Plaintiff's pain was most likely sensory in nature. Id. Dr. Pappas did not order any pain medication, or any other type of medication, or any further treatment. Id. at 1-i & 1-j. The cast was removed and Plaintiff was given a walking boot. Id. at ¶ 19.

With regard to the cast, Plaintiff asserts it should have been replaced or removed every six

weeks. Doc. 26 at pg. 3. He states the cast was left on for seventy-four days. Id. Nothing in the record contains the date the cast was applied or that instructions were given for it to be removed in six weeks.

On March 3rd, Dr. Nash wrote a new prescription for Ibuprofen 800 mg. for an additional thirty days. Resp. at ¶ 24. Plaintiff received the Ibuprofen. Id. at ¶ 25. On April 6th, the Ibuprofen was discontinued. Id. at ¶ 26.

On July 8th, Plaintiff submitted a medical request stating he was having pain in his foot and needed to see someone. Resp. at ¶ 27. He was seen by Nurse Brown that day. Id. at ¶ 28. Plaintiff indicates he was treated but he did not describe his treatment. Id. at ¶ 29. On July 11th, Plaintiff was prescribed Ibuprofen for ninety days. Id. at ¶ 30. Nothing in the record indicates whether Plaintiff in fact received this Ibuprofen. On July 22nd, Plaintiff was transferred to the Arkansas Department of Correction (ADC). Defts' Ex. 4.

Plaintiff was asked to describe in detail how Nurse Williams was deliberately indifferent to his serious medical needs. He replied: "Didn't provide proper treatment." Resp. at ¶ 33. His replies were the same with respect to Nurse Stewart and Nurse Cheatham. Id. at ¶¶ 34-35. While he received the prescribed Ibuprofen, Plaintiff states it did not provide any pain relief and that he requested something for pain relief everyday. Id. at ¶ 36. Plaintiff indicates he was ignored, in pain, neglected, and humiliated. Id. at pg. 18.

Warden Turner did not personally make any decisions regarding Plaintiff's medical care and was not involved in making appointments with doctors. Resp. at ¶ 37. However, according to the Plaintiff, he submitted grievances to Warden Turner and also spoke with him several times. Id. at ¶ 38. Plaintiff asserts that Warden Turner stated he would take care of the problem. Id. Plaintiff also believes Warden Turner should be liable for the decisions made by jail medical staff because

he supervised all staff and was responsible for the care of all inmates. Id. at ¶ 37. Plaintiff maintains Miller County failed to provide him with medical care and a safe environment. Id. at ¶ 40.

### 2. Summary Judgment Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986).

### 3. Arguments of the Parties

Defendants maintain they provided adequate medical care to Plaintiff and there is no evidence of deliberate indifference on their parts. Defendants also contend that there is simply no evidence of a custom or policy of Miller County that resulted in the provision of inadequate medical care to the Plaintiff.

Plaintiff maintains Defendants exhibited deliberate indifference to his serious needs in the following ways: failing to prescribe medication sufficient to provide him with some pain relief; leaving him in the cast longer than he should have been; not giving him proper cast care materials; not getting him in to see a doctor until ten days after he was booked in; and taking too long to schedule his appointments with Dr. Pappas' office.

### 4. Discussion

"Under the Eighth Amendment's proscription against cruel and unusual punishments, prison officials must provide medical care to inmates." Hines v. Anderson, 547 F.3d 915, 920 (8th Cir. 2008)(internal quotation marks and citation omitted). "A prison's medical staff violates the Eighth Amendment if they commit acts or omissions sufficiently harmful to evidence deliberate indifference

to [an inmate's] serious medical needs." <u>Meuir v. Green County Jail Employees</u>, 487 F.3d 1115, 1118 (8th Cir. 2007)(internal quotation marks and citation omitted). To establish a prima facie case, the Plaintiff must demonstrate that: (1) he suffered from an objectively serious medical need; and (2) Defendants actually knew of, but deliberately disregarded, that need. <u>Id.</u>

In this case, I conclude there are no genuine issues of fact as to whether Defendants exhibited deliberate indifference to Plaintiff's medical needs. Plaintiff was asked about his medical condition upon arrival at the MCDC. <u>Defts' Ex.</u> 1-a. He indicated he was on pain medication. <u>Id.</u> On January 1, 2010, he was prescribed Ibuprofen, 800 mg., three times a day. <u>Id.</u> at 1-b. On January 15th, Dr. Nash advised the jail nurse to refer the Plaintiff to Dr. Pappas. <u>Id.</u> at 1-d. On January 22nd, Plaintiff was provided a CT on Dr. Pappas' order. <u>Id.</u> at 1-e. Once the CT was done, an appointment was scheduled with Dr. Pappas. <u>Id.</u> at 1-h. Dr. Pappas placed Plaintiff in a walking boot but did not prescribe any medication or suggest further treatment. <u>Id.</u> at 1-i.

While the record shows that Plaintiff may have received, in his opinion, less than optimal care, and at a slower rate than he expected, there is no evidence of deliberate indifference on the part of the Defendants. <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997)("inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment"). With respect to the alleged delays in treatment, Plaintiff "must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." <u>Holden v. Hirner</u>, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted). Plaintiff has presented no such evidence.

### II. Motion for Judgment on the Pleadings

Defendant Turner moves for judgment on the pleadings on the grounds that no claim of constitutional dimension has been stated against him.

**1. Applicable Standard**

On a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, , a court applies the same standard as in a 12(b)(6) motion for failure to state a claim.  See Ginsberg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).  Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1940 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'"  Braden, 588 F.3d at 594 (quoting Iqbal, 129 S. Ct. at 1949).  The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949; see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

**2. Discussion**

Supervisors cannot be held liable for an employee's unconstitutional actions on a theory of respondeat superior.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).  "Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constituted deliberate indifference toward the violation."  Id.  "If the prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  Spruill v. Gillis, 372

F.3d 218, 236 (3d Cir. 2004); see also Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002)(non-medical professional is not personally liable for his medical staff's treatment decisions).

In this case, Warden Turner did not personally make decisions regarding Plaintiff's medical care. Resp. at ¶ 37. He was not involved in making doctors appointments. Id. Instead, Plaintiff merely contends he submitted grievances about his medical care and spoke with Warden Turner about the situation. Having found no evidence of deliberate indifference on the part of the medical staff, Warden Turner cannot be found to have shown deliberate indifference to Plaintiff's serious medical needs.

### III.  CONCLUSION

For the reasons stated, I recommend: (1) the motion for summary judgment filed by Separate Defendants Nurse Williams, Nurse Stewart, and Nurse Cheatham (Doc. 20) be granted; and (2) the motion for judgment on the pleadings filed by Separate Defendant Turner (Doc. 28) be granted. This case should be dismissed in its entirety with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of January 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE